**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Marija Decker | Jonathan Turner |
| | John Hunter |
| | Attorneys Present for Counter Defendants: |
| | Gabrielle Boutin |

**Proceedings:**    STATE AGENCY COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM (ECF No. 36 filed September 20, 2019)

TRUSTEES' MOTION TO STRIKE AFFIRMATIVE DEFENSES AND MOTION TO DISMISS COUNTERCLAIM (ECF No. 37 filed September 20, 2019)

## I.    INTRODUCTION

This case is the latest iteration of a labor dispute between plaintiff trustees ("Trustees") that administer several trusts and funds ("Trust Funds") that provide benefits to members of the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), on the one hand, and Smith-Emery Company ("SEC"), a California corporation that performs construction tests and inspections, on the other. In broad terms, the dispute concerns allegations that SEC has failed, over the course of many years, to make payments into certain trusts for the benefit of Local 12 members employed by SEC, which the Trustees allege is required by labor agreements between SEC (or its bargaining agents) and Local 12. The parties have filed several prior actions related to this general dispute in federal and state courts, and these actions are discussed in more detail, to the extent relevant, in the order below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Trustees initiated this latest action on May 9, 2019 by filing a complaint against SEC in this Court. See ECF No. 1 ("Compl."). The complaint states a single claim for relief for breach of collective bargaining agreements, and violation of the Employee Retirement Security Act of 1974 ("ERISA"). Compl., ¶¶ 14-28. According to the Trustees, SEC breached its collective bargaining agreements ("CBA's") with Local 12, and violated its obligations pursuant to 29 U.S.C. § 1145 of ERISA, by, since April 2015, subletting inspection and testing work to non-signatory employers and other non-bargaining unit personnel without paying appropriate fringe benefit contributions into the Trust Funds, which the Trustees allege is required by the parties' CBAs and ERISA. Id. Trustees also allege that SEC has failed to fulfill its CBA and ERISA obligations by underpaying its share of mandatory contributions into the Trust Funds that arise from work performed by Local 12 laborers in its employ, id. ¶ 18, and that SEC has also breached its CBAs and related trust agreements with Local 12 by failing to produce the necessary documentation for the Trustees to audit SEC's payroll and related business records from April 2015 to the present. Id. ¶ 19.

SEC filed an answer on July 15, 2019, asserting 13 affirmative defenses, and attached a counterclaim stating a single claim for relief. ECF No. 11 ("Answer" and "CC"). The counterclaim adds SEC's principal, James E. Partridge ("Partridge"), as a counterclaimant, and, in addition to plaintiffs, lists three California state agencies—the California Division of the State Architect ("DSA"), the California Office of Statewide Health Planning and Development ("OSHPD"), and the California Building Standards Commission ("BSC") (collectively, the "State Agencies" or "the State")—as counterdefendants. CC, ¶¶ 5-12. In the counterclaim, SEC and Partridge request a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Trustees' claims "to recover pension, health and welfare contributions and other employee benefits under SEC's labor contracts with [Local 12]" are foreclosed by (1) "state public safety laws regulating the building and construction industry" (the "Illegality Defense"), and (2) Section 302 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186 (the "LMRA Defense"). CC, ¶ 1.

On September 20, 2019, the State Agencies filed a motion dismiss the counterclaim as it applied to them. See ECF No. 36 ("State's MTD"). That same day, the Trustees filed a motion to dismiss the counterclaim as it applied to them, as well as a motion to strike all of the 13 affirmative defenses asserted by SEC's Answer. See ECF No. 37 ("Trustees' MTD"). SEC filed oppositions, spread across three briefs, on October 7, 2019: an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

opposition to the Trustees' motion to dismiss, ECF No. 41 ("MTD Opp."); an opposition to the State Agencies' motion to dismiss, ECF No. 43 ("State MTD Opp."); and an opposition to the Trustees' motion to strike, ECF No. 44 ("MTS Opp."). The State Agencies and the Trustees filed replies on October 11, 2019. See ECF No. 45 ("State's Reply"), ECF No. 46 ("Trustees' Reply").

The Court held a hearing on October 28, 2019. Having considered the parties arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are alleged by the parties in this action, and/or are known to the Court from its adjudication of the prior related actions discussed below.

### A.    The Parties

SEC performs construction inspection and testing work throughout California. SEC employs building construction inspectors ("BCI") to complete these inspection tasks. The National Labor Relations Board certified SEC's BCIs as a collective bargaining unit in 1969. Prior to 1999, SEC also employed laboratory technicians who performed different material tests on construction projects. The laboratory technicians were not certified to bargain collectively. In 1999, SEC spun off the laboratory division (and its non-union employees) into a new corporate entity called Smith-Emery Laboratories ("SEL").

Local 12 represents SEC's field inspectors. The laboratory employees, all of whom now work for the spun off SEL entity, are still not unionized. Through its bargaining agent, the Southern California Contractors Association ("SCCA"), SEC has entered into a series of three-year CBAs with Local 12. Pursuant to these agreements, SEC must pay a variety of fringe benefit contributions into the Trust Funds administered by the Trustees for the hours worked by covered employees performing covered work.

### B.    The Parties' Prior Litigation

On March 29, 2009, the Trustees filed suit against SEC to collect certain fringe benefit payments that SEC allegedly failed to deposit into the Trust Funds pursuant to CBAs covering the time period between March 1, 2003 and March 31, 2009. See Trustees

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. |

of the Operating Engineers Pension Trust v. Smith-Emery Co., No. 09-CV-01476-CAS (AJWx) (C.D. Cal. filed March 29, 2009) ("First Action").

The dispute turned in large part upon who was a covered employee pursuant to the CBA, and what work was covered. The Trustees alleged that "bolt testing work" was covered work under the relevant CBAs, and that, pursuant to a subcontracting provision of the those CBAs, SEC was obligated to make fringe benefit contributions to the Trust Funds to benefit the BCIs represented by Local 12 for bolt testing work undertaken by subcontracted personnel (including SEL employees) not represented by Local 12.[1] SEC denied that it had this obligation, and, at various points in the litigation, contended that bolt testing work could not be covered by the CBA since the organized BCIs employed by SEC lacked the state licenses needed to perform the work, whereas the subcontracted workers at SEL and elsewhere did hold those licenses (i.e., the Illegality Defense). See, e.g., First Action, ECF Nos. 112-5 at 21-22, 274 at 11, 297-1 at 8-11, 323 at 19. According to SEC, requiring SEC to make fringe benefits contributions on grounds that bolt testing work is covered by the CBA would amount to an order requiring SEC employees to conduct bolt testing work without a license, in violation of public policy. Id.

The First Action also turned in part upon the effect of a 2006 arbitration award that resulted from a grievance that Local 12 had brought against SEC. See First Action, ECF No. 353-5, Ex. E ("the 2006 Arbitration Award"). In that proceeding, the arbitrator concluded that bolt testing work was covered by the CBA. Id. at 5-6. SEC had advanced its Illegality Defense to rebut this conclusion. Specifically, SEC had elicited testimony at the arbitration proceeding that the "State of California requires that entities that do bolt testing be appropriately licensed," that SEC's BCIs did not have an appropriate license, and that, as a result, if "one of [SEC's] employees performed Anchor Bolt Testing," it

---

[1] The relevant paragraph of the subcontracting provision provides that: "Regardless of the source from which Building/Construction Inspectors or Sub-Employers are obtained, the Employer agrees to pay each Building/Construction Inspector or Sub-Employer the minimum wage, travel pay, mileage pay, subsistence and fringe benefits that are contained in this Agreement. . . . All fringe contributions shall be paid on behalf of the sub-employer employees to the Operating Engineers Health and Welfare Fund as described in Appendix A, Fringe Benefit Contributions, contained within this Agreement." CC ¶ 37 (quoting Article VII, ¶ C of the current CBA, which is substantially the same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

would be "a misdemeanor under the building code." See First Action, ECF No. 112-5 at 4266. On this basis, SEC argued in its post-arbitration brief that:

> [I]t is clear that the Union and Smith-Emery never agreed to include [bolt testing] in its Collective Bargaining Agreement with Local 12 [since] . . . it would require Smith-Emery to violate the law and to commit a misdemeanor by requiring employees of Smith-Emery (who are covered by the Local 12 Agreement) to conduct Bolt Testing when Smith-Emery is not licensed to perform such Bolt Testing. Certainly, this is an absurd result.

Id. at 4266-67. The arbitrator considered and rejected this defense, concluding that SEC could not "escape its responsibility" to employ Local 12 BCIs for the bolt testing work by spinning off SEL just "because its sister entity, [SEL], has the proper licensing to do this work while [SEC's BCIs] do not." First Action, ECF No. 353-5, Ex. E at 50. The arbitrator determined that the "appropriate remedy" pursuant to the CBA "is that the Union, Local 12, shall be made whole for the actual wages and benefits which would have been paid to bargaining unit employees had not [SEC] violated the agreements by utilizing non-unit personnel to perform the covered work." Id.

The Trustees argued in the First Action that the 2006 Arbitration Award collaterally estopped SEC from claiming that "the only work covered by the [CBA] is that work which requires a license of a deputy building inspector," since the arbitrator rejected this argument and concluded that bolt testing work was covered by the CBA. First Action, ECF No. 129 at 8. The Court initially rejected this argument, concluding that collateral estoppel did not apply because the arbitrator did not "necessarily decide" the issue. Id. After a bench trial in which SEC again advanced the Illegality Defense, see First Action, ECF No. 181 at 5548-5551, the Court entered judgment in the Trustees' favor on July 5, 2013 regarding certain amounts owed, but ruled against the Trustees as to other amounts after concluding that certain types of bolt testing work, including work performed by SEL, was not covered by the CBA. First Action, ECF No. 186. Following the entry of judgment, Trustees filed another action against SEC seeking to recover additional missed fringe benefit payments, on the same theories, but from a subsequent time period. See Trustees of the Operating

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Engineers Pension Trust v. Smith-Emery Co., No. 13-CV-09545-CAS (VBKx) (C.D. Cal. filed Dec. 30, 2013) ("Second Action").[2]

The parties cross-appealed the Court's judgment following the bench trial, and, after review, the Ninth Circuit reversed the Court's collateral estoppel conclusion and held that the Court should have given preclusive effect to the arbitrator's conclusion—reached by rejecting the Illegality Defense—that the CBA covered bolt testing and inspection work. First Action, ECF No. 366 at Ex. 2. The Ninth Circuit affirmed this conclusion, following SEC's petition for panel rehearing, in an amended memorandum disposition issued on March 23, 2016. See Trustees of Operating Engineers Pension Tr. v. Smith-Emery Co., 645 F. App'x 581, 582 (9th Cir. 2016) (also docketed as First Action, ECF No. 262 at 6).

After remand to this Court, Trustees filed a motion for judgment based on the Ninth Circuit's ruling on June 6, 2016. First Action, ECF No. 271. SEC opposed on grounds that, notwithstanding the Ninth Circuit's decision, the Illegality Defense precluded the Court from ordering SEC to make payments into the Trust Funds pursuant to the subcontracting provisions for work that Local 12 BCI's could not lawfully perform. See First Action, ECF No. 274 at 11 ("Numerous laws, regulations, and other requirements, including the Building Code and the requirements of facility owners in the at issue hospital projects, require the separation of duties between BCIs and Lab Techs and preclude the BCIs from performing the testing work.").

Following a settlement conference in September 2016, the parties executed a memorandum of understanding that appeared to resolve the disputes in both actions by requiring SEC to make a series of payments to the Trust Funds over time. First Action, ECF No. 291 at Ex. A. On January 19, 2017, the Court granted the Trustees' motions to enforce the settlement, over SEC's objection that the settlement was not intended to be binding. See First Action, ECF No. 301.

SEC subsequently filed motions for reconsideration, contending that the settlement did not address the Illegality Defense, and asserting that the enforcing the settlement's obligations on SEC would require SEC to "risk[] sanctions against the company from

---

[2] Both the First and Second Actions were consolidated before this Court. Because the material submissions in the two actions are identical, the Court will cite only to the docket in the First Action, even when referring to both.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

government agencies that oversee [school and hospital] construction" by performing testing that is not "permitted by state laws and regulations." First Action, ECF No. 312-1 at 6-7. At the same time, SEC also advanced the Illegality Defense to oppose the Trustees' motions for judgment in both actions, arguing that enforcing the settlement would violate public policy because SEC's BCIs "are not lawfully permitted to perform testing work." First Action, ECF No. 323 at 19.

On August 14, 2017, the Court granted the Trustees' motions for entry of judgment, and denied SEC's motions for reconsideration. First Action, ECF No. 329. The order on both motions squarely considered and rejected SEC's Illegality Defense, concluding that it did not preclude the Court from requiring SEC to make payments into the Trust Funds pursuant to their settlement and the subcontracting provision of the CBA. Id. at 10. The Court entered judgment in favor of the Trustees in both actions on August 21, 2017 totaling $1.6 million, plus interest. First Action, ECF No. 330.

SEC immediately appealed the Court's entry of judgment, as well as the Court's order enforcing the settlement agreement. First Action, ECF Nos. 307, 333. However, SEC voluntarily dismissed its appeals on January 31, 2018. First Action, ECF No. 350.

While the First and Second Actions were pending, SEC filed a complaint for declaratory relief in the Sacramento County Superior Court against the DSA, OSHPD, Local 12, and the Trustees. See Smith-Emery Company v. State of California, Div. of State Architect, No. 34-2017-00205865 (Sacramento Cnty. Sup. Ct. filed Jan. 5, 2017) ("Declaratory Relief Action"). The action essentially sought to establish the Illegality Defense as a matter of state law, by resolving that it was unlawful for SEC's BCIs to perform anchor bolt testing pursuant to California regulations. See First Action, ECF No. 297-1. SEC moved to stay the two federal actions before this Court pending resolution of the Declaratory Relief Action, but the Court denied the stay motion "because the parties had settled the action." First Action, ECF No. 304 at 2-3. In so doing, the Court declined to reach the question—raised by the Trustees in opposition to the stay motion—that either the 2006 Arbitration Award or the Ninth Circuit's decision acts as res judicata upon the Illegality Defense. Id.

After dismissing the Trustees and Local 12 from the Declaratory Relief Action, and after the Sacramento Superior Court granted OSHPD's motion for judgment on the pleadings, SEC and the remaining defendant—DSA—voluntarily stipulated to an entry of

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

judgment that "[s]pecial inspectors employed by Smith-Emery Company cannot lawfully perform testing work on school and hospital construction under the statutes and regulations governing school and hospital construction, because Smith-Emery Company does not operate a testing laboratory." First Action, ECF No. 353-5, Ex. A.

On the basis of that stipulated judgment, SEC moved this Court in both federal actions for an order vacating the Court's prior entry of judgment on grounds that the stipulated judgment from the state court established the Illegality Defense and rendered the federal judgment "inconsistent with law." First Action, ECF No. 353 at 2. On November 14, 2018, the Court denied the motions to vacate. See First Action, ECF No. 395. The Court expressly rejected SEC's argument that SEC should not "be required to pay contributions by way of settlement when the work and workers on which those contributions were calculated cannot be lawfully performed." Id. at 10. The Court explained that by settling the litigation, "SEC made a decision to forego further litigation, including its pursuit of the argument that it would be somehow illegal or unlawful to determine that bolt testing work was covered by the CBA," that "[n]othing in the settlement agreement requires or permits SEC's BCIs to perform work without a proper license," and that "any issues regarding the supposed illegality of the settlement agreement could have been, and indeed were, raised by SEC in its opposition to the Trustees' motions for entry of judgment," which the Court rejected. Id. at 11.

Following that order, and pursuant to the parties' settlement of the First and Second Actions, SEC was obligated to make the required payments to the Trust Funds from the subject periods relevant to those suits and submit records to the Trustees for audit to ensure compliance. The Trustees' filed a motion to enforce the settlement in June 2019 after they alleged that SEC had failed to comply with its audit obligations, which the Court granted on July 15, 2019. See First Action, ECF No. 412.

## C. The Present Action

Trustees' filed the present action on May 9, 2019. The complaint, like the complaints in the First and Second Actions, alleges that SEC breached its CBA with Local 12 and violated its ERISA obligations by failing to make required fringe benefit payments into the Trust Funds when it sublet inspection and testing work to non-signatory employers and other non-bargaining units. Compl., ¶¶ 14-28. The only material difference between the present action and the prior actions is that the instant action addresses SEC's alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

delinquencies during the time period from April 1, 2015 to the present, whereas the prior actions only addressed SEC's delinquencies through March 31, 2015.  Id. ¶ 18.

SEC "denies and disputes that any such contributions are owed."  CC, ¶ 18. Additionally, SEC and Partridge—who claims, in his personal capacity, that his civil engineering license is threatened by the relief sought by the Trustees, see CC, ¶¶ 43-51— filed a counterclaim requesting an order declaring that the Illegality Defense, as well as the LMRA, bar the Trustees' claims in their entirety.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

A motion to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction.  See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

Standing is a jurisdictional requirement, and the party invoking federal jurisdiction has the burden of establishing it.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "To meet the constitutional threshold of Article III standing," the party invoking federal jurisdiction must allege that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [the defendant], and (3) that is likely to be redressed by a favorable judicial decision."  Daniel v. Nat'l Park Serv., 891 F.3d 762, 766 (9th Cir. 2018) (citing Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016)).  A party invoking federal jurisdiction "must demonstrate standing separately for each form of relief sought." Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc., 528 U.S. 167, 185 (2000)).

### B.   Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　**'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

facts alleged under a cognizable legal theory.'" <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting <u>Balisteri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. <u>Pareto v. FDIC</u>, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>see Moss v. United States Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). <u>In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996), <u>rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. Proc. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (holding dismissal with prejudice is appropriate only when the complaint could not be saved by amendment).

### C.    Rule 12(f)

A motion to strike material from a pleading is made pursuant to Federal Rule of Civil Procedure 12(f). Pursuant to that rule, the Court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." See Fed. R. Civ. Proc. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

Granting or denying a motion to strike lies within the discretion of the district court. See Federal Sav. & Loan Ins. Corp. v. Gemini Mgmt., 921 F.2d 241, 244 (9th Cir. 1990). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. Bureerong v. Uvawas, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996); see also RDF Media Ltd. v. Fox Broadcasting Co., 372 F.Supp.2d 556, 566 (C.D. Cal. 2005). Where a Rule 12(f) motion would not streamline litigation, a district court has discretion to deny the motion. Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc., No. 17-CV-01613-CJC (DFMx), 2018 WL 4944224, at *3 (C.D. Cal. Mar. 9, 2018) (citing cases).

## IV.    DISCUSSION

The Trustees and the State Agencies have each filed motions to dismiss. Each motion is discussed in turn below.

### A.    Trustees' Motion

The Trustees' Motion contains three parts: (1) a motion to dismiss for lack of standing pursuant to Rule 12(b)(1); (2) a motion to dismiss for failure to state a claim

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

pursuant to Rule 12(b)(6); and (3) a motion to strike affirmative defenses pursuant to Rule 12(f).

### 1.  Counterclaimants' Standing

The Trustees contend that the counterclaim should be dismissed because neither SEC nor Partridge have standing.  For the reasons discussed below, the Court disagrees.

### a)  Partridge's Standing To Obtain Declaratory Relief Against The Trustees

The Trustees contend that Partridge should be dismissed from the action because he lacks Article III standing to assert a claim for declaratory relief.  See Trustees' Mot. at 15; Trustees' Reply at 6-7.  According to the Trustees, "there is no controversy between Trustees and Partridge because Partridge is litigating [SEC's] rights," and not his own. Trustees' Reply at 6.  The argument, in essence, is that Partridge has failed to allege any constitutionally cognizable injury that affects him individually.  In response, Partridge points to allegations in his countercomplaint claiming that his personal state engineering license would be at risk were the Trustees to succeed on their claim against SEC, and that this threatened injury is sufficient to establish his standing to seek a declaration neutralizing that threat.  See MTD Opp. at 18-19 (citing CC, ¶¶ 28, 43-51).

"[T]o determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Shell Gulf of Mexico Inc. v. Ctr. For Biological Diversity, Inc., 771 F.3d 632, 635 (9th Cir. 2014).  For the purposes of assessing the justiciability of Partridge's claims, the Court must assume the correctness of his legal arguments on the merits.  See Stop the Beach Renourishment, Inc. v. Fla. Dept. of Envtl. Prot., 560 U.S. 702, 729 n.10 (2010) ("accepting [plaintiff's] version of Florida law as true" in the justiciability analysis, despite subsequently rejecting the same substantive claims on the merits); United States v. Antelope, 395 F.3d 1128, 1133 (9th Cir. 2005) (assessing the satisfaction of Article III "from [plaintiff's] perspective, in whose shoes we stand when deciding this threshold issue of justiciability" and therefore assuming "his legal argument is correct"); Flynt v. Rumsfeld, 355 F.3d 697, 702 (D.C. Cir. 2004) ("In order to test the . . . justiciability of [plaintiff's] claims, we … assume that they are otherwise valid.").

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Here, Partridge alleges that he "stands to lose his license" as a civil engineer were the Trustees to succeed on the merits of their adverse claim against SEC.  MTD Opp. at 19 (citing CC, ¶¶ 43-51).  Assuming the hypothetical correctness of Partridge's legal argument, and the truth of his factual allegations, the Court concludes that these allegations establish an actual case or controversy sufficient to invoke federal jurisdiction pursuant to Article III of the U.S. Constitution.  Partridge's interests are adverse to the Trustees, who he claims are threatening his state engineering license.  Those adverse interests have produced a substantial controversy concerning whether or not SEC must take actions that, Partridge alleges, would require him to risk his license. And the threatened injury to Partridge is sufficiently immediate, given that Trustees have already filed this action to compel the conduct that Partridge claims gives rise to the threat.  See Pac. Gas & Elec. v. State Energy Res. Conserv. & Dev. Comm'n, 461 U.S. 190, 201 (1983) ("One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.").

The Court accordingly **DENIES** the Trustees' motion to dismiss Partridge for lack of Article III standing.

> **b)     SEC's and Partridge's Standing To Obtain Declaratory Relief Pursuant to ERISA**

Apart from Article III standing, the Trustees argue that neither SEC nor Partridge have statutory standing to seek the declaratory relief they request pursuant to the Declaratory Judgment Act and ERISA because neither SEC nor Partridge is a "participant, beneficiary, or fiduciary" authorized by the ERISA statute to bring a civil action based thereon.  See Mot. at 16 (citing 29 U.S.C. § 1132).[3]

While the Trustees correctly identify the classes of persons authorized by statute to bring a *direct claim* pursuant to ERISA, the scope of persons permitted to seek declaratory relief in connection with disputes pertaining to or arising out of rights and obligations imposed by ERISA is broader.  "A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there."

---

[3] Although the Trustees appear to have abandoned this argument in their reply brief, the Court addresses it anyway.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Standard Ins. Co. v. Saklad, 127 F.3d 1179, 1181 (9th Cir. 1997) (citing Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 19, n. 19 (1983)).

The Ninth Circuit has accordingly held that a party not otherwise entitled to bring a direct claim pursuant to ERISA may nevertheless bring a claim pursuant to the Declaratory Judgment Act to define its rights and obligations pursuant to ERISA if the party "against whom the declaratory relief is sought could have asserted his rights" pursuant to ERISA "in a federal court." Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249, 1253 (9th Cir. 1987) (holding that the plaintiff had standing to seek declaratory relief regarding its ERISA obligations pursuant to the Declaratory Judgment Act, even if it was not authorized to bring a direct ERISA claim, because "ERISA would have permitted [the defendant] to sue on this claim in federal court"); Saklad, 127 F.3d at 1181 (holding same, and stating that the party seeking the ERISA declaration raised "a classic case for declaratory relief"). See also Callaway Golf Co. v. Screen Actors Guild, Inc., No. 07-CV-0373-LAB (WMC), 2009 WL 10672729, at *4–5 (S.D. Cal. Mar. 30, 2009) ("Because the Court would have jurisdiction over a suit brought by Defendants under ERISA § 502 and 515 to require contributions under the applicable agreements, the Court likewise has jurisdiction by way of the Declaratory Judgment Act and 28 U.S.C. § 1331 to declare Plaintiffs' obligations under those same agreements.").

Transamerica is controlling. The Trustees have brought an ERISA action against SEC to compel allegedly delinquent contributions to certain Trust Funds governed by ERISA. The Trustees have standing to bring these claims. As in the cases cited above, that is sufficient to establish SEC's and Partridge's statutory standing to seek the declaratory relief they request with respect to their rights and obligations pursuant to ERISA.

The Court accordingly **DENIES** the Trustees' motion to dismiss the countercomplaint for lack of statutory standing pursuant to ERISA.

## 2. Failure to State A Claim

Counterclaimants seek declarations that the subcontracting provision located at "subparagraph C of Article VII contained in the [CBAs] is facially invalid and unenforceable" because it (a) requires SEC and Partridge to undertake conduct that they allege is outlawed by "state public safety laws regulating the building and construction

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

industry" (the Illegality Defense), and (b) is preempted by Section 302 of the LMRA (the LMRA Defense). CC, ¶¶ 1, 52.

The Trustees move to dismiss the counterclaims for both declarations pursuant Rule 12(b)(6). See Trustees' MTD at 17-23. For the reasons discussed below, the motion is granted as to both counterclaims.

### a)      Counterclaimants' State Law Compliance Claim

Counterclaimants first seek a declaration that, in effect, establishes their Illegality Defense to the Trustees' ERISA and LMRA affirmative claims. The argument is familiar: according to counterclaimants, the subcontracting provision of the CBA between Local 12 and SEC is illegal and unenforceable because it obligates SEC to pay substitute fringe benefits to trusts benefiting Local 12 personnel employed by SEC for work done by subcontracted non-union personnel that the Local 12 personnel could not have lawfully performed since they do not possess the required state licenses. CC, ¶¶ 36-40.

The Trustees move to dismiss the counterclaim seeking a declaration ratifying this defense on grounds that it is barred by res judicata and/or collateral estoppel. See Trustees' Mot. at 17-20. They argue that "SEC is precluded from relitigating its illegality argument" because it was "considered and rejected by the arbitrator and the Ninth Circuit," as well as in the First and Section Actions. Id. at 18.

### (1)      Res Judicata

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." Western Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997). The doctrine applies equally to "defenses to[] recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131 (1979); see also Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4407 (3d ed. 2019) (stating same) ("Wright & Miller"). Parties seeking to invoke res judicata to bar the subsequent relitigation of a claim or defense must establish that "there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties" between the current and prior action (or actions). Tritz v. U.S. Postal Serv., 721 F.3d 1133, 1141 (9th Cir. 2013) (citing Glickman).

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

SEC and Partridge do not contest the third element, but they argue that there is neither an identity of claims, nor a qualified prior final judgment on the merits, and that res judicata accordingly does not apply. See MTD Opp. at 8-9.

### (a)    Identity of Claims or Defenses

With respect to the first element, the Ninth Circuit weighs four factors to determine whether two claims or defenses are identical: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." Mpoyo v. Litton Electro-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005); see also Wright & Miller at § 4407 n. 39 (comparing approaches). These factors are "not appl[ied] mechanistically," and the Ninth Circuit has "often held the common nucleus criterion to be outcome determinative under the first res judicata element." Mpoyo, 430 F.3d at 987-88 (holding that while "the latter three criteria do[] not yield a clear outcome," the "first criterion controls" and established res judicata); see also Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr, 994 F.2d 1426, 1430 (9th Cir. 1993) (stating that the "common nucleus" transactional criterion "is the most important," and listing cases where the Ninth Circuit "previously applied the doctrine of res judicata on the ground that the two claims arose out of the same transaction, without reaching other factors").

This action clearly arises out of the "same transaction, or series of transactions" that gave rise to the 2006 Arbitration Award, the First Action, the Second Action, and the relevant appeals of and motions to reconsider or vacate this Court's decisions in those actions. W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992) (internal quotation omitted). Each of these cases derives from a dispute about whether CBAs between Local 12 and SEC require SEC to make payments into trust funds benefiting Local 12 members employed by SEC for covered work performed by non-unionized subcontractors. And in each of these cases, SEC argued that state licensing regulations preclude an interpretation of the CBA obligating SEC to make those payments. See First Action, ECF No. 112-5 at 4266-67 (SEC argues the Illegality Defense to the arbitrator); First Action, ECF No. 181 at 5548-5551 (SEC argues the Illegality Defense to this Court at the bench trial held in the First Action); SEC's Principal Br. and Response Br., Trustees of the Operating Engineers Pension Trust v. Smith-Emery Co., No. 13-56830, ECF No. 24-1 at 59-60 (9th Cir. filed July 2, 2014) (SEC challenges the part of the 2006 Arbitration Award that rejected the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Illegality Defense before the Ninth Circuit); First Action, ECF No. 274 at 11 (SEC argues the Illegality Defense to oppose entry of judgment in the First Action); First Action, ECF No. 353 at 2 (SEC argues the Illegality Defense in its motion to vacate the entry of judgment).

Notwithstanding the above, SEC and Partridge argue that the transactional factor is not satisfied here because the present action concerns alleged contractual obligations and breaches from a time period subsequent to the time period that was relevant in any of the prior actions where SEC unsuccessfully raised the Illegality Defense. See MTD Opp. at 9. Citing Karr, 994 F.2d at 1429, they contend that, where res judicata is asserted in a contract action, "the transactional test requires a showing that the alleged breach in that action 'arose prior to the filing of the original action for breach of contract.'" Id. (quoting Karr, internal marks omitted). But that is not what Karr holds, and the quotation is taken out of context.

In Karr, the Ninth Circuit considered whether a labor trust's action to compel an audit of an employer's ERISA payments into a fund for the period between April 13, 1988 and March 21, 1989 concerned facts that were part of the same transaction as a prior action filed by the labor trust to recover delinquent ERISA payments for a prior but partially overlapping period of time. Id. at 1429. Stating that "claims based on a breach of the same contract" will be barred if in a subsequent action if "the alleged breaches antedate the original action," the court held that "the Trust's claim for accurate payments arose out of the same transactional nucleus of facts as the prior actions for delinquent payments," and was barred by res judicata, since the "second action was premised on [an] alleged breach of the same [contract] and involved overlapping time periods." Id.

The rule in Karr, and the authorities cited therein, merely establishes a condition that is *sufficient* to conclude that *a contract plaintiff's* claims for breach arise out of the same transaction as a prior action, and are thus subject to res judicata. It does not establish, as SEC and Partridge contend, a condition that is *necessary* to conclude that *a contract defendant's* defenses do the same—and particularly not here, where the defense at issue (configured as a counterclaim for declaratory relief) raises a pure question of law that relates back to the validity of the same static CBA term that has, in one agreement or another, consistently operated on the parties for more than a decade.

That the Trustees' present claims pertain to subsequent alleged breaches by SEC is, accordingly, of no moment to the transactional factor analysis as it applies to SEC's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

reassertion of its Illegality Defense as a counterclaim for relief. Cf. MTD Opp. at 9. None of the Trustees' pending claims could have been brought as part of the First Action or the Second Action, or raised in the 2006 arbitration, since the Trustees could not have known that SEC would again, allegedly, fail to make required payments into the Trust Funds. But SEC's Illegality Defense could have been, and indeed was, asserted in each of those cases to defend against analogous breach claims to those that the Trustees allege in the instant case. For all of these reasons, the Court finds that the counterclaim requesting a declaration establishing the Illegality Defense quite clearly arises out of the "same transaction, or series of transactions" as the preceding actions discussed above.

Because this "most important" factor is clearly established, Karr, 994 F.2d at 1430, the Court concludes that it is "outcome determinative" of the first res judicata element. Mpoyo, 430 F.3d at 987-88. To be sure, however, the Court also finds and concludes that the other factors pertinent to the first element also support the application of the doctrine: (i) the present action and the prior actions each involve the same rights and obligations (i.e. the Trustees' rights under the CBA to collect what it contends are required payments, SEC's obligations to make those payments, as well as SEC's rights to be immune from an illegal argument); (ii) the interests established in the prior actions (i.e., the scope of covered work established by the 2006 arbitration, and the Trustees' rights to receive payment for that work which is subcontracted out) would be curtailed if SEC (and Partridge) could relitigate a principal defense to delay compliance; and (iii) because the counterclaim raises pure legal issues of contract interpretation and statutory preemption, the "evidence" in this action will be no different from the prior actions where the Illegality Defense was rejected. For all of these reasons, the Court concludes that the first res judicata element is satisfied.

### (b)     Final Judgment On The Merits

The question is therefore whether any of the related prior actions in which SEC raised the Illegality Defense produced a qualifying "final judgment on the merits." Tritz, 721 F.3d at 1141. The Trustees identify two possibilities: (1) the 2006 Arbitration Award; and (2) the Court's entry of judgment in the First and Second Actions.

"[A] valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court." NTCH-WA, Inc. v. ZTE Corp., 921 F.3d 1175, 1180 (9th Cir. 2019) (quoting Restatement (Second) of Judgments § 84(1) (1982)). Nevertheless, SEC and Partridge contend that the 2006 Arbitration Award cannot have preclusive effect because "the arbitrator's decisional authority in that case was limited to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

the contractual issues concerning CBA coverage," and because, they argue more broadly, "a labor arbitration award" cannot "define statutory or other extra-contractual public policy rights and obligations." MTD Opp. at 5-6. The Court disagrees.

As for the first argument, the arbitrator did not exceed his authority in rejecting SEC's Illegality Defense. The arbitrator was tasked to determine whether bolt testing is work covered by the CBA that gives rise to SEC's obligations pursuant to the subcontracting provision, and if so, what the appropriate contractual remedy would be for breach. In discharging that responsibility, the arbitrator was required to consider SEC's Illegality Defense: that the CBA could not be read to cover bolt testing because "it would require Smith-Emery to violate the law and to commit a misdemeanor by requiring employees of Smith-Emery (who are covered by the Local 12 Agreement) to conduct Bolt Testing when Smith-Emery is not licensed to perform such Bolt Testing." First Action, ECF No. 112-5 at 4266-67. To conclude that bolt testing was covered by the CBA, as the Ninth Circuit held he did, the arbitrator necessarily rejected this argument. See First Action, ECF No. 353-5, Ex. E at 50 (discussed, *supra*, § II). This decision was well within the scope of his authority.

SEC and Partridge's second argument—that the 2006 Arbitration Award cannot have preclusive effect because, following the rule affirmed in <u>Wright v. Universal Maritime</u>, 525 U.S. 70 (1998), "statutory rights cannot be litigated and decided" in an arbitral forum pursuant to a labor contract unless the "waiver of right to litigate in court was 'clear and unmistakable,'" MTD Opp. at 6—also fails. SEC's Illegality Defense is a contract defense and it does not concern extracontractual "statutory rights" or "other legal issues beyond contract coverage" that would trigger application of the rule in <u>Wright</u>. See <u>Wright</u>, 525 U.S. at 79 (holding that presumption of arbitrability did not apply, and "clear and unmistakable" waiver of federal forum was required, only because "[t]he dispute in the present case . . . concerns not the application or interpretation of any CBA, but the meaning of a federal statute," such that "[t]he cause of action Wright asserts arises not out of contract, but out of the ADA, and is distinct from any right conferred by the collective-bargaining agreement"). The question raised by the defense in the arbitration expressly involved the intended coverage and interpretation of the CBA: whether one could determine that "the Union and Smith-Emery . . . agreed to include [bolt testing] in its Collective Bargaining Agreement" in light of SEC's claim that doing so "would require Smith-Emery to violate the law." See First Action, ECF No. 112-5 at 4266-67.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

While the defense may have accordingly required the arbitrator to consider the interaction between certain state regulations and the parties' agreement, interpreting the meaning of a bargained instrument within a statutory framework is not the same as forcing a party to litigate a claim or defense that arises exclusively under a statute in an arbitral forum.  See, e.g., Gray v. Petrossian, Inc., No. 17-CV-06870-PSG (PJWx), 2017 WL 8792671, at *3 (C.D. Cal. Nov. 20, 2017) (concluding that "the waiver requirement" in Wright did not apply to plaintiff's state statutory claims since those claims were "within the scope of the CBA").  The Court accordingly concludes that the 2006 Arbitration Award is a qualified final judgment with preclusive effect.  See NTCH-WA, Inc., 921 F.3d at 1180.[4]

The Court's entry of judgment, enforcing the settlement in resolution of the First and Section Actions, is also a qualified final judgment on the merits.  "Court-approved settlement agreements . . . have res judicata effect."  Tritz, 721 F.3d at 1141 (citing Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746–47 (9th Cir. 2006)).  Despite this rule, SEC and Partridge argue that the Court's entry of judgment (and denial of its motion to reconsider and vacate that entry of judgment) cannot have preclusive effect because that judgment did not "decide any of the underlying issues in the prior action."  MTD Opp. at 7.  Even if that were the rule in this circuit, and the counterclaimants cite no authority demonstrating that it is,[5] the argument rests on an incorrect factual premise.  Entry of

---

[4] At oral argument, SEC's counsel read from Amaro v. Continental Can Co., 724 F.2d 747 (9th Cir. 1984)—discussed at MTD Opp. at 6-7, and itself quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 57 (1974)—for the proposition that since "[t]he specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land," the "resolution of statutory issues 'is a primary responsibility of courts,' not arbitrators."  Id. at 750.  But Amaro is not good law.  In light of Wright and other more recent Supreme Court authority, the Ninth Circuit expressly overruled Amaro earlier this year in Dorman v. Charles Schwab Corp., 934 F.3d 1107, 1111 (9th Cir. 2019) (overruling Amaro and holding that "the Supreme Court has ruled that arbitrators are competent to interpret and apply federal statutes.").  The case, and the specific proposition that SEC asserts, accordingly has no application here.

[5] SEC and Partridge's sole legal authority for this proposition is a case from the Western District of Virginia, Kollmorgen Corp. v. Yaskawa Electric Corp., 147 F. Supp. 2d 464, 465 (W.D. Va. 2001).  The question in that patent case was whether a defendant's

**CIVIL MINUTES – GENERAL**    '**O**'

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

judgment in the First and Second Actions—and its affirmation after SEC subsequently moved to vacate it—in fact required the Court to twice consider and reject the "underlying" Illegality Defense that is now before the court as a claim for declaratory relief. See First Action, ECF No. 329 at 10 (rejecting Illegality Defense to enter judgment); First Action, ECF No. 395 at 10-11 (rejecting Illegality Defense to deny motion to vacate judgment). The Court accordingly finds and concludes that the Court's entry of judgment in the First and Second Actions is also a qualified final judgment entitled to preclusive effect.

\*　　\*　　\*　　\*　　\*

This Court and the arbitrator in the 2006 proceedings, in related actions stemming from the same principal dispute between the same parties, have considered and rejected the Illegality Defense as a bar to SEC's obligation to make payments to the Trust Funds pursuant to the subcontracting provision of the CBA. The defense—whether so styled, or configured, as here, as a claim for declaratory relief—is therefore res judicata. The Trustees' motion to dismiss the counterclaimants' request for a declaration establishing the defense is therefore **GRANTED**. Because no amendment could cure the deficiencies in the complaint, all of which exist as a matter of law, the dismissal is with prejudice and without leave to amend.

---

prior settlement of a Markman claim construction issue in a Wisconsin federal court was a "final judgment" with preclusive effect in the Virginia federal court. The court concluded that it was not, but did so as a strict matter of patent law pursuant to the Federal Circuit's rule that "judicial statements regarding the scope of patent claims are entitled to [preclusive] effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment *on the question of validity or infringement*." A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 704 (Fed. Cir. 1983) (emphasis added). Because the Kollmorgen court found that the prior settlement of the Markman issue in the Wisconsin action did not bear "on the question of validity or infringement," it concluded that A.B. Dick prevented the settlement from having any preclusive effect. Kollmorgen, 147 F. Supp. 2d at 469. Nothing about that case, however, suggests that the rule in A.B. Dick has any application to non-patent settlements, in this circuit or any other. The Ninth Circuit's rule in Tritz, cited *supra*, controls.

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

### (2)  Collateral Estoppel

The Trustees' also argue that the Illegality Defense is barred by collateral estoppel. Although the Court grants the Trustees' motion to dismiss the claim for declaratory relief establishing the defense since it is res judicata, the Court concludes that collateral estoppel would also apply to the same effect.

"[C]ollateral estoppel applies to preclude an issue adjudicated in an earlier proceeding if: (1) the issue was necessarily decided at the previous proceeding and is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Granite Rock Co. v. Int'l Bhd. of Teamsters, Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local 287 (AFL-CIO), 649 F.3d 1067, 1070 (9th Cir. 2011).

As discussed above in connection with the res judicata analysis, the second and third elements are established or conceded, as is the question of "identical" claims or defenses as it relates to the first element. See supra § IV.A.2.a.1. The question, for collateral estoppel purposes, is whether the Illegality Defense was "necessarily decided" in either the 2006 arbitration or the First and Second Actions. The Court finds and concludes that it was.

In each of those proceedings, as set forth above, SEC presented and the tribunal heard evidence and argument from both sides on the question of whether or not state licensing regulations precluded an interpretation of the CBA that requires SEC to make payments into trust funds benefiting Local 12 members employed by SEC for covered work performed by non-unionized subcontractors, even when the Local 12 members are not licensed to perform the work. Both the arbitrator and this Court specifically concluded that the state regulations did not bar this interpretation. This conclusion was necessary both to the arbitrator's decision that the CBA covered bolt testing, as well as this Court's determination that SEC could be required to make payments to the Trust Funds, pursuant to the subcontracting provision, even when the Local 12 members for whom the payments are made to benefit are not licensed to perform the work. The Ninth Circuit has held that the "necessarily decided" element is established in these circumstances. See, e.g., United States v. Weems, 49 F.3d 528, 532 (9th Cir. 1995) (holding that this element was satisfied where "the district court heard evidence and argument from both sides on the question of whether or not defendant knew of the marijuana grow," "specifically concluded that he did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

not," and where that "conclusion was necessary to the court's decision that the Puyallup property was forfeitable") (discussed in Wright & Miller at § 4421 n. 3, n. 17, n. 19); cf. Smith-Emery Co., 645 F. App'x at 582 (holding that, in prior litigation involving the 2006 arbitration award, the arbitrator "necessarily decided" the closely related question involving the scope of the CBA's covered work provision).

For this reason, too, the Trustees' motion to dismiss the counterclaims' request for a declaration establishing the Illegality Defense is therefore **GRANTED** without leave to amend.

### b)    Counterclaimants' LMRA Preemption Claim

In addition to their request for a declaration that the subcontracting provision requirements are illegal pursuant to state licensing regulations, SEC and Partridge request a declaration that the provision is also invalid pursuant to § 302(c)(5) of the LMRA (codified at 29 U.S.C. § 186(c)(5)). CC, ¶ 41. Specifically, the counterclaimants contend that the subcontracting provision requires SEC to violate the LMRA by making contributions for the benefit of subcontracted personnel and not, as the LMRA requires, "for the sole and exclusive benefit" of SEC's organized Local 12 employees. See MTD Opp. at 12, 13 (quoting 29 U.S.C. § 186(c)(5)). The Trustees' move to dismiss this claim on grounds that it fails as a matter of law. See Trustees' MTD at 20-23.

The subcontracting provision of the CBA requires SEC to make fringe benefit payments into the Trust Funds, at rates established by the parties, for every hour of covered work that SEC hires out to non-Local 12 subcontractors who are not signatories to the CBA. CC ¶ 37. The provision more specifically states that "fringe benefit contributions shall be paid on behalf of the sub-employer employees to the [trust fund]" to the extent SEC relies on the non-signatories. Id. SEC and Partridge allege that the provision is invalid because the "on behalf of" language indicates that the payments are not "for the sole and exclusive benefit" of SEC's organized Local 12 employees, but, SEC and Partridge claim, actually for the benefit for the subcontracted personnel. See MTD Opp. at 13.

These allegations do not state a claim. To begin with, nowhere does SEC or Partridge allege that the subcontracted employees are beneficiaries of the Trust Funds into which SEC is obligated by the subcontracting provision to make payments. To the contrary, everything that is alleged about the subcontracting provision indicates that it is intended to collect payments for the benefit of SEC's organized Local 12 *employees* in the

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|---|---|---|---|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

event that SEC elects not to hire them for work that is otherwise covered by their CBA. See CC, ¶ 11 (alleging that the CBA agreements between Local 12 and SEC "provided for certain *employee* fringe benefits funded in part by contributions paid by SEC to trust funds administered by the Trustees") (emphasis added); ¶ 36 (alleging that the Trustees' rely on that provision to collect benefits for the organized SEC employees). And SEC alleges no facts—let alone plausible facts—to explain why Local 12 would have, as it claims, counterintuitively bargained for fringe payments intended to benefit non-signatory, non-union personnel. See Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

But notwithstanding these pleading deficiencies, the Court interprets the text of the subtracting provision to indicate, on its face, that these benefits are not available to anyone other than covered SEC employees. See CC, ¶ 37. While the subcontracting provision's "on behalf of" language could have been more precise, that is not a basis to graft an entirely different and counterintuitive meaning onto the CBA.[6] In Walsh v. Schlect, 429 U.S. 401 (1977), which both parties cite favorably in their moving papers, the U.S. Supreme Court rejected precisely this argument in connection with another subcontracting provision.[7] The

---

[6] At oral argument, SEC's counsel directed the Court to review Item 10 from a separate Master Labor Agreement between Local 12 and the Southern California Contractors Association that, SEC argues, demonstrates that Local 12 could have, but did not, use different language in its CBA with SEC if it had intended to prevent SEC from hiring subcontractors. See ECF No. 42-1, Ex. 2 at 26. The Court takes judicial notice of Item 10 in that other agreement, but finds that it is entirely irrelevant. Whether or not SEC is permitted to hire subcontractors for covered work is not at issue. No one disputes that SEC is permitted by the relevant CBAs to do so. Rather, the material question is whether, having hired subcontractors to perform covered work, SEC is obligated to make certain payments to the Trust Funds, and if so, whether—per the instant LMRA analysis—those payments benefit SEC employees. The fact that Local 12 negotiated for the unrelated language in Item 10 in this agreement sheds no light on any of those issues.

[7] The provision there provided that: "[E]mployer shall require [a] subcontractor to be bound to all the provisions of this Agreement, or such employer shall . . . be liable for payment of these employees wages, travel, Health-Welfare and Dental, Pension, Vacation,

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Supreme Court there concluded that, "although inartfully worded," the subcontracting clause "lends itself to a construction that ties signatory employer contributions to the trust funds as measured both by hours worked by his own employees and hours worked by his nonsignatory subcontractor's employee." Id. at 408. "[S]o construed," the Supreme Court held that the provision "does not violate" the LMRA. Id.

The Ninth Circuit has read Walsh for the proposition that subcontracting provisions "should not be interpreted to render them illegal and unenforceable" pursuant to the LMRA "where the wording yields a construction which is both legal and enforceable." Seymour v. Hull & Moreland Eng'g, 605 F.2d 1105, 1115 (9th Cir. 1979). Seymour involved another subcontracting provision challenged pursuant to the LMRA on the same grounds that the provision allegedly provided benefits for non-employees. In rejecting the LMRA invalidation argument, the Ninth Circuit held that the provision must "be given the construction mandated by Walsh," or else it would have "no logical or legally enforceable meaning." Id. at 1115. "If the union cannot compel payments to fringe benefit funds based upon" the subcontracting provision, "then there is little that it can enforce under that article." Id. Considering this an absurd result, and with "all signposts pointing so forcefully in the direction" of a lawful construction, the court held that the provision was valid, and ordered the employer to make the required payments. Id.

Following Walsh and Seymour, the Court concludes that the correct and only plausible construction of the subcontracting provision requires SEC to make payments into the trust funds for the benefit of SEC's own employees, and not the non-signatory subcontracted personnel. There is accordingly no plausible basis to conclude from SEC's allegations, or any set of allegations, that the required payments as set forth by the subcontracting provision are barred by the LMRA. The Trustees' motion to dismiss the LMRA claim is accordingly **GRANTED** without leave to amend. See Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008) (concluding that "the resolution of contractual claims on a motion to dismiss may be proper if the terms of the contract are unambiguous").

---

Apprenticeship and CIAF contributions in accordance with this Agreement." See Pet. Br., Walsh v. Schlecht, No. 75-0906, 1976 WL 181410, at *11 (U.S. filed May 15, 1976).

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

### 3.    Motion To Strike Affirmative Defenses

The Trustees move to strike all of the affirmative defenses asserted in SEC's Answer on grounds that those defenses are either unavailable to an employer defendant in an ERISA and LMRA action to collect allegedly delinquent payments to an employee trust fund, or else meritless "as a matter of law." See Trustees' Mot. at 9-13.

The Trustees are correct that "traditional contract law does not apply in full force in suits brought under the LMRA and ERISA to collect delinquent trust fund contributions," such that "the range of defenses to such a suit is severely limited." S. California Retail Clerks Union & Food Employers Joint Pension Tr. Fund v. Bjorklund, 728 F.2d 1262, 1265 (9th Cir. 1984) (holding that allegedly delinquent employer defendant could not, according to this rule, assert that it was fraudulently induced into forming the subject CBA as a defense to the payment obligations it assumed pursuant to that CBA). This rule might bar SEC from advancing some of the affirmative defense theories it asserts in its Answer, and it might not bar others. Compare Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 88 (1982) (holding that, as SEC argues here, an employer can defend a suit for delinquent contribution by showing that the promise to make contributions was itself illegal).

But it would be premature to foreclose any of the challenged defense theories at the pleading stage. The parties have not yet had the opportunity to fully develop their litigation positions, and SEC has not even made clear which of its affirmative defenses it actually intends to rely upon. And the Court's ruling on SEC's counterclaim might, or it might not, affect SEC's defense strategy moving forward. See, e.g., Harbor Breeze Corp., 2018 WL 4944224, at *3 (district court exercised its discretion to deny motion to strike pursuant to Rule 12(f) where it was not clear how granting the motion would streamline issues for trial). Because the motion to strike, for this reason, does not definitely streamline the litigation of this action, the Court concludes that the Trustees' motion to strike should be denied. Once the parties have had an opportunity to refine their arguments, engage in discovery, and settle upon their litigation positions, the Trustees' arguments, if still relevant, may be addressed by way of a motion for summary judgment.

Accordingly, the Court **DENIES** plaintiff's motion to strike without prejudice to considering those same arguments at proceedings on summary judgment.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

### B.    State Agencies' Motion

SEC and Partridge also name the State Agencies as counterdefendants in their counterclaim.  CC, ¶¶ 8-10.  The State Agencies move to dismiss on grounds that the counterclaims are barred by the State of California's sovereign immunity.  See State's MTD at 6-13. Although the Court dismisses SEC and Partridge's claims with prejudice on their merits, see supra IV.A.2, out of an abundance of caution, the Court will also address the State Agencies' sovereign immunity dismissal arguments.[8]

### 1.    Sovereign Immunity

The Eleventh Amendment bars suit against the several states and their instrumentalities for legal, equitable, or declaratory relief "unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally

---

[8] Counterclaimants' also assert that the State Agencies are necessary parties to their counterclaims pursuant to Federal Rule of Civil Procedure 19.  See MTD Opp. at 10-11. Although the Court need not reach these arguments in light of its conclusion that sovereign immunity would bar suit against the State Agencies even if counterclaimants' claims were not already subject to dismissal without leave to amend, the Court nevertheless also concludes that the State Agencies are not necessary parties pursuant to either of the asserted provisions of Rule 19.  First, Rule 19(a)(1)(A) does not apply because the Court can afford SEC and Partridge all of their claimed declaratory relief without the State Agencies in the case.  Second, Rule 19(a)(1)(B) does not apply because the State Agencies do not "claim[] an interest relating to the subject of the action," and have in fact expressly disavowed any interest in the litigation whatsoever.  See Fed. R. Civ. Proc. 19(a)(1)(B).  Moreover, subdivision (a)(1)(B) does not apply because there is no risk of an "inconsistent obligation" (which could require joinder), even if there may be some risk of "inconsistent results" (which does not require joinder).  See Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California, 547 F.3d 962, 976 (9th Cir. 2008) (explaining the difference). Even if the Trustees prevail in this action and secure an order requiring SEC to make claimed payments into the Trust Funds, SEC would be capable of complying with that order "without breaching" the stipulated order entered by the Sacramento Superior Court, including by continuing to outsource bolt testing work to SEL (or another non-union licensed contractor) and making continued payments into the Trust Funds.  Id.  The State Agencies are therefore not properly joined pursuant to Rule 19, either.

| | **CIVIL MINUTES – GENERAL**    '**O**' | | |
|---|---|---|---|
| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). In the absence of Congressional abrogation, "[w]here a suit has not been consented to . . . dismissal of the action is required." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). The Supreme Court created an exception to this general principle in Ex parte Young, 209 U.S. 123 (1908). The Ex parte Young exception permits private parties to bring suits for "prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000).

The State Agencies contend that sovereign immunity bars the counterclaims for declaratory relief in this action because (i) the State Agencies have not consented to suit and no federal statute abrogates their immunity, and (ii) the Ex parte Young exception does not apply since the counterclaim "does not name as counterdefendants any state officers in their official capacities." See State's MTD at 6-7. SEC and Partridge apparently concede that their counterclaims do not fit the exception established by Ex parte Young, but respond that "the state has expressly and explicitly waived its constitutional immunity" by enacting a waiver provision in the Government Claims Act (Cal. Govt. Code § 814.). See State MTD Opp. at 4.

The counterclaimants misread the relevant provision.    Section 814 of the Government Claims Act, formerly titled the Tort Claims Act, states: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." Cal. Govt. Code § 814. The "part" referenced in § 814 is the Government Claims Act itself (Cal Govt. Code §§ 810-895.8), which waives the state liability for a series of identified torts. The California Supreme Court made clear that the purpose of § 814 "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances" involving the identified torts. Brown v. Poway Unified School Dist., 4 Cal. 4th 820, 829 (1993). Far from waiving the state's immunity to a broad range of suits, § 814 stands for the opposite proposition that "immunity is waived" by the act "only if the various requirements of the act" involving the torts it identifies "are satisfied." Id. In other words, § 814 clarifies that the Government Claims Act only waives the state's immunity for the tort claims it addresses—for example, tort claims against the state involving "dangerous conditions of public property," Cal. Govt. Code §§ 830-840.6, "fire protection," Cal Govt. Code §§ 850-850.8, and state operated "unmanned aircraft," Cal Govt. Code §§ 853-853.5—and no other claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

Section 814 is accordingly not a waiver of the state's immunity to this declaratory judgment action, and certainly not an "unequivocally expressed" waiver to federal jurisdiction in particular.  See BV Eng'g v. Univ. of California, Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988) ("[F]or a state statute or constitutional provision to constitute a waiver of eleventh amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*") (emphasis original) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985)); Doe v. Regents of the Univ. of California, 891 F.3d 1147, 1152 (9th Cir. 2018) ("A state's waiver of Eleventh Amendment immunity and consent to suit must be 'unequivocally expressed.'").  The Court therefore finds and concludes that the Eleventh Amendment immunizes the State Agencies from the counterclaims asserted against them, and accordingly **GRANTS** the State Agencies' motion to be dismissed from this action.

### 2.    **Dismissal Without Leave To Amend**

The remaining question is whether the Court's dismissal of the counterclaims against the State Agencies should be with or without leave to amend.  Dismissal without leave to amend is only appropriate when a claim cannot be saved by any amendment consistent with the remaining allegations.  See Eminence Capital, 316 F.3d at 1052; Schreiber, 806 F.2d at 1401.  Because the Court grants the State Agencies' motion to dismiss on grounds that the state entities named in the counterclaim have not waived their sovereign immunity, counterclaimants could still theoretically amend to name the relevant state officers as counterdefendants, and bring suit against them for prospective declaratory relief in their official capacities pursuant to the exception established by Ex parte Young.  If such an amendment were not futile, it would be appropriate to grant counterclaimants leave to pursue those claims.

The State Agencies contend that such an amendment would be futile, however, since "there is no 'actual controversy' between Smith-Emery and the State Agencies" sufficient to establish an Article III injury.  State's MTD at 7.  Counterclaimants respond that the State Agencies "clearly have an interest at stake in the outcome . . . that clearly affects SEC's legal interests" because the State Agencies could later prosecute them for state regulatory violations, even if the State Agencies have forsworn any intent to do so now.  State MTD Opp. at 6-9.

"[T]he threatened enforcement of a law creates an Article III injury" when the party asserting the claim "alleges an intention to engage in" some proscribed "course of conduct"

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|------------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

and "there exists a credible threat of prosecution thereunder." <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 159 (2014) (quoting <u>Babbitt v. Farm Workers</u>, 442 U.S. 289, 298 (1979)). "In evaluating the genuineness of a claimed threat of prosecution," courts in this circuit consider "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and "the history of past prosecution" under the challenged law. <u>Thomas v. Anchorage Equal Rights Comm'n</u>, 220 F.3d 1134, 1139 (9th Cir. 2000). A claimant bears the burden to establish all three elements in order to allege an actual case or controversy that survives a motion to dismiss. <u>See Sacks v. Office of Foreign Assets Control</u>, 466 F.3d 764, 773 (9th Cir. 2006) (dismissing claim on these grounds even though two out of three prongs of the <u>Thomas</u> test were satisfied).

The counterclaimants' arguments fail <u>Thomas</u>. First, counterclaimants have alleged no "plan" to violate any of the state regulations they identify, and no court has ordered counterclaimants to commit any such violations. To the contrary, counterclaimants have disclaimed all intention of violating the identified regulations. They have in fact fought, repeatedly, to avoid undertaking any conduct that, in their view, would require them to violate these rules. At most, counterclaimants allege that they *may* have to comply with some hypothetical future court order, should one be handed down, that requires counterclaimants to violate these regulations. CC, ¶¶ 42, 50-52. But that is speculation, with several layers, not a concrete plan to undertake or continue conduct that violates any regulatory proscription, even assuming that their conduct would be proscribed in the first place. <u>See Thomas</u>, 220 F.3d at 1139 (holding that there is no justiciable controversy where the "alleged injury is too 'imaginary' or 'speculative' to support jurisdiction") (quoting <u>Babbitt</u>).

Second, the State Agencies evince no intent to initiate enforcement proceedings against counterclaimants, and take no position on counterclaimants' argument that the State Agencies would even have cause to initiate enforcement proceedings against them should they be required to make the contested payments into the Trust Funds. <u>See</u> State's MTD at 8-9, State's MTD Reply at 3-4. That is insufficient to establish an actionable threat of prosecution. <u>See, e.g.</u>, <u>Loyd's Aviation, Inc. v. Ctr. for Envtl. Health</u>, No. 11-CV-01078 AWI, 2011 WL 4971866, at *3 (E.D. Cal. Oct. 19, 2011) (concluding that there was no justiciable case or controversy in pre-enforcement action where "State Defendants have

been unequivocal that there is no intention to bring any suit under [the subject law] against Plaintiffs").[9]

Third, counterclaimants allege no facts indicating that the State Agencies have historically enforced the subject state regulations, let alone against an employer for merely making payments into a trust fund pursuant to a labor agreement to benefit unlicensed employees for work performed by licensed subcontractors. Absent allegations of "active enforcement" that "render[s] the plaintiff's fear of prosecution reasonable"—even assuming, per Stop the Beach and Antelope, discussed in § IV.A.1, that the regulations at issue are even enforced in the manner feared at all—the Court does not find that there is a "credible threat" of prosecution that gives rise to an actual justiciable controversy. Thomas, 220 F.3d at 1140-41.

For these reasons, the Court concludes that permitting amendment per Ex parte Young would be futile since there is no justiciable controversy between the State Agencies and the counterclaimants, in any case. The State Agencies' motion to dismiss is accordingly granted with prejudice, and without leave to amend.

## V. CONCLUSION

For the foregoing reasons, the Court:

(1) **DENIES** the Trustees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1);

---

[9] Counterclaimants' reliance on Stormans, Inc. v. Selecky, 586 F.3d 1109 (9th Cir. 2009) is misplaced. In that case involving two pharmacists' challenge to rules promulgated by the Washington State Pharmacy Board, the court found a justiciable controversy even though the Pharmacy Board had taken no action against the plaintiffs because the plaintiffs would have otherwise been forced to comply with rules despite their contention that the rules were unconstitutional. Here, neither SEC nor Partridge challenge the state engineering regulations at issue—in fact, they stand on the proposition that those rules are generally valid and enforceable. There is accordingly no actual or imminent dispute between the State Agencies and the counterclaimants, as there was in Stormans.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-CV-04058-CAS-AFM | Date | October 28, 2019 |
|----------|----------------------|------|------------------|
| Title | TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST ET AL. V. SMITH-EMERY CO. | | |

(2) **GRANTS** the Trustees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) without leave to amend;

(3) **DENIES** the Trustees' motion to strike pursuant to Federal Rule of Civil Procedure 12(f), without prejudice to raise the same objections at proceedings on summary judgment; and

(4) **GRANTS** the State Agencies' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) without leave to amend.

IT IS SO ORDERED.

00:55
CMJ